2013 Ark. App. 301

**William S. FISHER, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 12–465.**

Court of Appeals of Arkansas.

May 8, 2013.

---

**20.** 79 Ark.App. 195, 85 S.W.3d 558 (2002).

Price Law Firm, Little Rock, by: Robert J. Price, for appellant.

Dustin McDaniel, Att'y Gen., by: Vada Berger, Ass't Att'y Gen., for appellee.

ROBERT J. GLADWIN, Chief Judge.

Appellant William Fisher appeals from the Garland County Circuit Court's denial of his motion to suppress filed in conjunction with his conditional plea on a charge of driving while intoxicated (DWI), first offense. He argues that the circuit court erred by denying his motion to suppress. We affirm.

Arkansas State Police Trooper Josh Heckel stopped the vehicle that appellant was driving when appellant pulled up to a sobriety checkpoint on Highway 270 West near the Royal Post Office. Trooper Heckel and three other troopers were conducting the checkpoint, and there were four police cars with blue lights flashing blocking the highway between the hours of 11:00 p.m. and 1:00 a.m. The troopers had reflective vests, spotlights in the road, and flashlights, and motorists traveling from both directions had no option but to stop at the checkpoint.

Trooper Heckel testified at the suppression hearing that the sobriety checkpoint was his sole reason for stopping appellant's vehicle and that, until he made contact, he did not have any suspicion that appellant had committed an offense of any kind. Trooper Heckel testified that, when he stopped appellant, he could detect an odor of alcohol on appellant's breath and that he also observed appellant to have bloodshot, watery eyes. Trooper Heckel acknowledged that appellant's speech was normal, that appellant was polite, cooperative, and respectful throughout their entire contact, and that he appeared to understand what was asked of him. Trooper Heckel noted, however, that when he asked appellant whether he had been drinking that day, appellant stated that he had been.

While appellant was still seated in the driver's seat, Trooper Heckel held a PBT device through the driver's window and told appellant to blow, which he explained was his routine practice during a roadblock to require anyone on whom he detected

the odor of alcohol. Appellant blew into the PBT device as instructed, and based on the PBT result, Trooper Heckel then told him to get out of the vehicle and perform various field-sobriety tests.

Trooper Heckel administered four additional field-sobriety tests, including a second PBT. Although appellant informed Trooper Heckel that he had been told that he had natural nystagmus in his eyes, Trooper Heckel apparently concluded that appellant failed the horizontal-gaze-nystagmus (HGN) test because he lacked smooth pursuit in both eyes and had "distinct and sustained nystagmus at maximum deviation in both eyes." He also failed the walk-and-turn test, missing on heel-to-toe and starting before instructed. He did not demonstrate any "clues" on the one-leg-stand test, which he passed. Finally, Trooper |₃Heckel administered the second PBT, after which Trooper Heckel arrested appellant for driving while intoxicated.

Trooper Heckel put appellant in his police car and took him to the Garland County Detention Center for a BrAC test. At the jail, Trooper Heckel reviewed with appellant a statement-of-rights form concerning administration of a BrAC test, reading the form verbatim to appellant. Trooper Heckel explained to appellant that he was deemed to have consented to a chemical test and that he could refuse to take one, but, if he did, he would be in violation of Arkansas's refusal-to-submit law. He also informed appellant of his rights concerning an additional test at his own expense. Appellant initialed the form, indicating that he understood its contents. Appellant submitted two samples to the BrAC machine at the jail but declined to request a test at his own expense.

Appellant entered into a negotiated-plea agreement with the State to resolve the DWI charge. In exchange for appellant's conditional nolo contendere plea to the DWI charge, the State agreed that he would be allowed to appeal the denial of his motion to suppress evidence that challenged the manner in which samples of his breath had been seized both during the sobriety checkpoint and later at the Garland County Detention Center. The trial court accepted the parties' conditional-plea agreement and entered a sentencing order on February 17, 2012, and this appeal followed.

When reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or |₄probable cause, giving due weight to inferences drawn by the circuit court. *Ward v. State*, 2012 Ark. App. 649, at 3, 2012 WL 5834738. A finding is in clear error when the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* The court defers to the superiority of the circuit court to evaluate the credibility of witnesses who testify at a suppression hearing. *Id.*

## I. *PBT Results*

Appellant does not challenge the validity of the roadblock or the sobriety checkpoint; instead, he challenges the seizure of his breath by means of the PBT device into which he was instructed by Trooper Heckel to blow. Appellant claims that the State failed to prove that a valid exception existed to the requirement of a warrant to support the seizure of appellant's breath via the PBT.

The United States Supreme Court has recognized that a compelled intrusion into the body by government actors for substances to be tested for alcohol content

and the ensuing chemical analysis constitute searches within the meaning of the Fourth Amendment to the U.S. Constitution. *Ferguson v. Charleston*, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001). Appellant argues that the roadside seizure of a person's breath by means of a PBT device is a search and seizure under Arkansas Rule of Criminal Procedure 10.1 (2012). He cites *State v. Lowe*, 144 Or. App. 313, 926 P.2d 332 (1996), as an example of another state that has specifically held that a warrantless seizure of a person's breath is a Fourth Amendment violation.

Appellant submits that the State was required to introduce evidence proving that the seizure of his breath was the product of a valid exception to the requirement of a warrant—clear₅ and positive evidence that consent was freely and voluntarily given. *See* Ark. R.Crim. P. 11.1(b) (2012). Appellant maintains that the State failed to do so because the evidence indicates that the manner in which Trooper Heckel induced him to submit to the PBT was not an attempt to obtain consent. When appellant first stopped at the checkpoint, Trooper Heckel, who was armed and accompanied by other officers at the time, reached into the driver's side of the vehicle where appellant was seated, held a PBT device through the driver's window, and told appellant to blow. Appellant claims that the fact that he complied with Trooper Heckel's directive does not demonstrate consent on his part, noting that mere acquiescence to a claim of lawful authority does not equal consent. *Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002).

Once a court determines that an unlawful seizure under the Fourth Amendment has taken place, it must then consider whether evidence seized from the execution of that search must be suppressed. *Keenom v. State*, 349 Ark. 381, 80 S.W.3d 743 (2002). Appellant argues that the incriminating evidence in this case was obtained by exploitation of the presumptively unreasonable roadside seizure of appellant's breath via the initial PBT. Appellant claims that the court should suppress all the evidence seized as a result of the warrantless seizure because, but for that primary illegality, there would be no incriminating evidence against him.

Appellant also claims that Trooper Heckel's command for him to blow into the PBT device violates Arkansas Rules of Criminal Procedure 2.1, 2.2, and 2.3 (2012). Rule 2.2(a) states that a law-enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request. *Id.* Rule 2.2(b) provides that in making a request pursuant to Rule 2.2(a), no law-enforcement officer shall indicate that a person is legally obligated to furnish information or to otherwise cooperate if no such legal obligation exists. Rule 2.3 states that if a law-enforcement officer acting pursuant to this rule requests any person to come to or remain at a police station, prosecuting attorney's office, or another similar place, he shall take such steps as are reasonable to make clear that there is no legal obligation to comply with such a request. Although he acknowledges that Trooper Heckel's request that appellant provide a sample of his breath would have been permissible under Rule 2.1(a), he contends that ordering him to do so was impermissible and violates Rules 2.1, 2.2, and 2.3.

Appellant maintains that, even if suppression were not otherwise required by virtue of the Fourth Amendment violation previously discussed, the violation of the Arkansas Rules of Criminal Procedure was

substantial and would merit suppression when the circumstances are considered as set forth in Arkansas Rule of Criminal Procedure 16.2(e) (2012).

■ We disagree. The State does not dispute that the collection of appellant's breath is a search for purposes of the Fourth Amendment and Arkansas Rule of Criminal Procedure 10.1(a) (2010), but it disputes that either a warrant or appellant's consent was required for it. This court recently reiterated in *Jacobs v. State*, 2013 Ark. App. 177, 427 S.W.3d 83, 2013 WL 961930:

A Fourth Amendment seizure occurs when a vehicle is stopped at a roadblock or checkpoint. The question then becomes whether such a seizure is reasonable under the Fourth Amendment. Where a vehicle stop is made on less than reasonable suspicion of criminal activity, its permissibility is determined by a balancing test. That test, as enunciated by the United States Supreme Court in *Brown v. Texas*, 443 U.S. 47, 50–51 [99 S.Ct. 2637, 61 L.Ed.2d 357] (1979), requires us to consider three factors: (1) a weighing of the gravity of the public concerns served by the seizure; (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty.

*Id.* at 6, 427 S.W.3d at 87, 2013 WL 961930 (internal citations omitted).

■ Law-enforcement officers may detain and investigate the lawfulness of the conduct of those whom they reasonably suspect to have committed a crime, including DWI. *See Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *see also* Ark. R.Crim. P. 3.1 (2012). Rule 3.1 requires the officer to possess reasonable suspicion that the person is committing, has committed, or is about to commit a felony or misdemeanor involving danger to

persons or property. *Johnson v. State*, 2012 Ark. App. 167, 392 S.W.3d 897. The officer must develop reasonable suspicion to detain before the legitimate purpose of the traffic stop has ended. *Id.* Whether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. *Id.*

The State cites several cases supporting the proposition that such investigation includes the administration of field-sobriety tests, including PBTs, which do not require the consent of the person suspected. *See State v. Prescott*, 280 Neb. 96, 784 N.W.2d 873 (2010) (holding that a PBT is "in line" with field-sobriety testing for which only reasonable suspicion is needed); *Commonwealth v. Blais*, 428 Mass. 294, 701 N.E.2d 314 (1998) (observing that the court's holding that an officer needs only reasonable suspicion to administer standard field-sobriety tests is in accord with the vast majority of jurisdictions to have considered the question); *cf. Gazaway v. State*, 2010 Ark. App. 776, at 4, 2010 WL 4638327 (observing that PBTs are only valid evidence to support an arrest); *Hilton v. State*, 80 Ark.App. 401, 96 S.W.3d 757 (2003) (citing refusal to take PBT as supporting probable cause to arrest for DWI).

■ Here, we hold that, Trooper Heckel had more than a bare suspicion, under Arkansas Rule of Criminal Procedure 2.1 (defining reasonable suspicion), that appellant was driving while intoxicated before he administered the PBT. Trooper Heckel observed appellant driving a vehicle and upon initial contact with him noticed that appellant had bloodshot, watery eyes and smelled of intoxicants. In addition, appellant admitted that he had

been drinking, which, taken together with the other evidence, meets the higher standard of probable cause. *See Hilton, supra* (holding that smell of alcohol, bloodshot eyes, admission of drinking, and refusal to take PBT established probable cause).

■ Additionally, we hold that the circuit court did not err by denying the motion to suppress because there was probable cause to arrest appellant even without consideration of the initial PBT results. Appellant told Trooper Heckel that he had been drinking, his eyes were bloodshot and watery, he smelled of intoxicants, and he failed two of the three additional field-sobriety tests—the HGN test and the walk-and-turn test. These facts, without more, were sufficient to permit a person of reasonable caution to believe that appellant had committed the offense of DWI. *Hilton, supra.* It is undisputed that appellant was not arrested until after Trooper Heckel had conducted additional field-sobriety tests, and, at that time, Trooper Heckel had probable cause to do so irrespective of any PBT results. Accordingly, we affirm on this point.

## II. *BrAC Test*

Appellant's second argument for reversal is that the circuit court should have suppressed the results of the BrAC test administered at the Garland County Detention Center because the form Trooper Heckel read to him did not set forth the three conditions contained in Arkansas Code Annotated section 5–65–202(a) (Supp. 2011) in which a driver is deemed to have impliedly consented to chemical tests of blood, breath, or urine. The form stated that appellant had impliedly consented by "operat[ing] a motor vehicle" or by being "in actual physical control of a motor vehicle [.]" Appellant maintains that the deficient form rendered his consent to the BrAC test involuntary, requiring the suppression of the test results.

■ We hold that rulings on evidentiary claims in conditional-plea cases are not appealable under Ark. R.Crim. P. 24.3(b)(i) (2012). Although appellant claims to be appealing "an adverse determination of a pretrial motion to suppress seized evidence[,]" as authorized by Rule 24.3(b)(i), Arkansas appellate courts have held that claims that deficient forms provided to DWI arrestees prior to the administration of a BrAC are evidentiary, not suppression, claims, irrespective of their label. *Mhoon v. State*, 369 Ark. 134, 251 S.W.3d 244 (2007); *Scalco v. State*, 42 Ark. App. 134, 856 S.W.2d 23 (1993). Because rulings on evidentiary claims are not appealable under Rule 24.3(b)(i), we decline to address the merits of appellant's argument on appeal. *Nicholas v. State*, 2010 Ark. App. 696, at 4–6, 2010 WL 4132878; *see also Scalco, supra.*

Affirmed.

PITTMAN and VAUGHT, JJ., agree.