2013 Ark. App. 322

**Walter POWELL, III, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 12–743.**

Court of Appeals of Arkansas.

May 15, 2013.

John C. Bassett, for appellant.

Dustin McDaniel, Att'y Gen., by: Rebecca B. Kane, Ass't Att'y Gen., for appellee.

RITA W. GRUBER, Judge.

Walter Powell III was convicted in a jury trial for possession of cocaine with intent to deliver and possession of drug paraphernalia. He was sentenced as a habitual offender to a total of 480 months' imprisonment and $8000 in fines. He raises four points on appeal. In his first three points, he contends that the trial court erred in determining that police had probable cause to stop his car, that the prolonged detention was legal and valid, and that he freely and voluntarily consented to the search of his car.[1] In his final point, he contends that the evidence was not sufficient to support the convictions. We affirm.

The prohibition against double jeopardy requires that we review the sufficiency of evidence before we examine trial error. *Stewart v. State*, 2010 Ark. App. 9, 373 S.W.3d 387. In a challenge to the suffi-

---

1. This case returns to us after we ordered Powell to file a supplemental addendum. *Powell v. State*, 2013 Ark. App. 149, 2013 WL 749772. The supplemental addendum he has filed contains a video CD of the traffic stop and search of the vehicle, along with an accompanying time line. The original addendum was deficient in these respects.

ciency of the evidence, we consider only the evidence supporting the verdict, including any evidence that was erroneously admitted. *Id.* For a criminal conviction, we review the evidence in the light most favorable to the State and affirm if the verdict is supported by substantial evidence. *Id.* Substantial evidence is evidence that induces the mind to go beyond mere suspicion or conjecture and that is of sufficient force and character to compel a conclusion one way or the other with reasonable certainty. *Id.* We defer to the finder of fact on matters of witness credibility. *Id.* Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *McKenzie v. State,* 362 Ark. 257, 208 S.W.3d 173 (2005).

*Sufficiency of the Evidence*

On appeal, Powell challenges the jury's finding that he possessed more than twenty-eight grams of cocaine, that he possessed it with intent to deliver, and that the scale found in his car was drug paraphernalia. Under the statute in effect at the time of these acts, it was unlawful "for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." Ark.Code Ann. § 5–64–401(a) (Supp.2009). An element of subsection (a)(1)(B)(i)–(ii) was that the substance's "aggregate weight, including an adulterant or diluent" be twenty-eight or more but less than two hundred grams. Ark.Code Ann. § 5–64–401 (Supp.2009). The definition of drug paraphernalia included "[a] scale or balance used, intended for use, or designed for use in weighing or measuring a controlled substance." Ark. Code Ann. § 5–64–101(14)(B)(v) (Supp. 2009). Prior convictions relating to a controlled substance and the object's proximity to the controlled substance were factors relevant to a determination that an object was drug paraphernalia. Ark.Code Ann. § 5–64–101(14)(C) (Supp.2009).

The events that led to the charges against Powell began with a traffic stop of his car the afternoon of March 7, 2011, by Officer Joe Warren of the Rogers Police Department's narcotics unit. A bag of cocaine and a digital scale were found in a search of the car subsequent to the stop. Felisha Lackey of the state crime lab testified that the weight of the substance submitted in this case was 32.597 grams of cocaine, hydrochloride, and levamisole. She stated that the weight was for the cocaine and the cutting agent together and that no "quantitation test" had been done specifically for cocaine. We hold that her testimony constituted substantial evidence to support the jury's finding that Powell possessed more than twenty-eight grams of cocaine, by aggregate weight, which is all that the statute requires.

Police officers testified that the scale in Powell's car was recovered along with the cocaine; that the quantity of cocaine was larger than typical for personal use; and that paraphernalia for personal use is more often a straw or a spoon or a syringe rather than scales, which are needed for measuring amounts to be sold. Powell testified in his own defense that he was a heavy user, that he used the scale because he had been cheated in making his buys, and that he had two prior convictions for felonies in Crawford County, Kansas. The jury was free to disbelieve Powell and to believe officers about the purpose of the scale; further, it was permissible for the jury to infer from Powell's prior convictions that the scale was drug paraphernalia and that he possessed the cocaine with intent to deliver. The evidence was thus sufficient to support these two convictions.

### Suppression Issues

Powell's first three points concern the circuit court's denial of his motion to suppress. The appellate court conducts a de novo review of a denial of a motion to suppress under the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, and giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. *Menne v. State,* 2012 Ark. 37, 386 S.W.3d 451. We reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id.*

### Probable Cause to Stop

◼ Powell first argues that the stop was illegal because his vehicle displayed a valid Kansas license plate, he constantly used turn signals when changing lanes, he was not speeding, he received no ticket, and Officer Warren could not specify the traffic violation in his testimony. He concludes that the officer had no probable cause to stop him because he committed no traffic violations. We disagree.

◼ A police officer may conduct a traffic stop and detain a motorist only where the officer has probable cause to believe that a traffic violation has occurred. *Barrientos v. State,* 72 Ark.App. 376, 39 S.W.3d 17 (2001). The relevant inquiry is whether the officer had probable cause to believe that a traffic violation was being committed or had occurred. *Id.*

Officer Warren testified that his primary job was "looking for drugs on the road." He testified that he observed Powell's vehicle impeding a line of four cars behind him in an outside lane of I–540 and, on two occasions, making lane changes and signaling only after beginning to move into the other lane. Both are traffic violations.

Ark.Code Ann. §§ 27–51–301(b), –403(b), –302 (Repl.2010); *see also Yocum v. State,* 325 Ark. 180, 188, 925 S.W.2d 385, 389 (1996) (stating that an arrest "shall not be deemed to have been made on insufficient cause ... solely on the ground that the officer ... is unable to determine the particular offense which may have been committed") (citing Ark. R.Crim. P. 4.1). In light of these statutes and Officer Warren's testimony, we cannot say that the trial court's findings that traffic violations occurred and probable cause existed are clearly against a preponderance of the evidence.

### Prolonged Detention

Powell contends that, even if the traffic stop was legal, the prolonged detention afterward violated Arkansas Rule of Criminal Procedure 3.1. He argues that he immediately complied with the officer's request to produce a driver's license and an insurance card, both of which were valid; there were no warrants for his arrest; he was not under the influence of alcohol or a controlled substance, nor did the officer use the trained canine that was in his patrol car; and the officer saw nothing illegal in plain view. He concludes that the trial court erred in determining that the detention was reasonable and "necessary." We disagree.

◼ As part of a valid traffic stop, a police officer may detain a traffic offender while the officer completes certain routine tasks, such as computerized checks of the vehicle's registration and the offender's driver's license and criminal history, and the writing up of a citation or warning. *Sims v. State,* 356 Ark. 507, 157 S.W.3d 530 (2004). During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the

vehicle, and he may act on whatever information is volunteered. *Id.* However, after those routine checks are completed, unless the officer has a reasonably articulable suspicion for believing that criminal activity is afoot, continued detention of the driver can become unreasonable. *Id.* "Our case law suggests that a stop is not complete until the warning citation and other documents are delivered back to the driver." *Menne v. State,* 2012 Ark. 37, at 5–6, 386 S.W.3d 451, 454. This detention is unrelated to a Rule 3.1 detention. *Laime v. State,* 347 Ark. 142, 60 S.W.3d 464 (2001).

The trial court found that the length of the traffic stop was reasonable. The court stated that, in observing the video, it noted "that within two minutes of questioning by Corporal Warren ... the defendant admitted to having K2 in his vehicle and approximately two minutes later he also admitted to the possession of the scales, which are commonly used in drug trafficking."

Officer Warren's trial testimony, coupled with the time line of a video before us, reveal the following. The traffic stop occurred at 14:31. Warren approached Powell's vehicle on the passenger side, told him why he had been stopped, and asked for proof of insurance and driver's license. Warren observed Powell to be "very shaken and nervous"; his voice was "broken or shaky" and he made "very little eye contact." Warren was suspicious of a Swisher cigar wrapper lying on the floorboard of the passenger seat, knowing the cigars to be commonly used for making "blunts" for smoking marijuana. At 14:33, Warren returned to his patrol vehicle to run the driver's license and a background check, which revealed that Powell had been arrested on narcotics charges in Kansas.

At 14:38, Officer Warren returned to Powell's vehicle and asked him to step out

to answer questions, which he did. Warren asked Powell what he had been arrested for; Powell at first just said "DWI," and then said for "a set of scales that were used for marijuana." Warren asked if he could search his vehicle, and at 14:39 Powell denied the request. At 14:39:45, within two minutes of the time questioning had begun, he admitted to having K2, an illegal synthetic marijuana, in the vehicle. Warren testified that he "could tell there was something else in the car at that time" and probably had told Powell he needed to be honest. At 14:41, after approximately two more minutes, when Powell was asked if he had "anything he shouldn't," he admitted having a scale underneath the seat. At 14:42:36, Powell gave Officer Warren permission to get the scale from the vehicle, which Powell did. Officer Warren went to the vehicle at 14:42:44, saw a suspected bag of cocaine in a Zip–Loc under the seat, and at 14:43:01, returned with it. At 14:43:15, he placed Powell under arrest.

The first issue is whether the length of the traffic stop was reasonable. We agree with the State that it was. Within four minutes and six seconds of the time questioning began, Powell admitted that there were two illegal items in the vehicle and consented to its search. Officer Warren placed him under arrest approximately twelve minutes after the traffic stop was initiated. Furthermore, the legitimate purpose of the traffic stop was not complete when Officer Warren asked to search the vehicle, which was before he had returned Powell's documents. The circuit court did not clearly err in finding the length of the stop reasonable.

The second issue is whether Officer Warren developed a reasonable articulable suspicion that criminal activity was underway to allow further detention under Arkansas Rule of Criminal Procedure 3.1:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances.

Officer Warren testified that Powell was nervous and avoided eye contact. Warren saw a Swisher cigar wrapper on the floor of the car and learned that Powell was previously arrested for narcotics. Powell initially admitted only to a DWI charge. He subsequently admitted to having K2 and a scale in his vehicle. The detention was approximately twelve-and-a-half minutes. The totality of the circumstances gave rise to a reasonable suspicion that Powell was engaged in felony criminal activity, thus allowing detention of fifteen minutes or a reasonable time under the circumstances.

## Consent to Search

██ Powell contends, as he did at the conclusion of the suppression hearing, that the evidence should have been suppressed because he did not freely and voluntarily give consent to search his car. He obtained no ruling on this argument, however, and it is not preserved for appellate review. A claim is barred when no specific ruling is made. *Huddleston v. State,* 347 Ark. 226, 61 S.W.3d 163 (2001).

Affirmed.

WALMSLEY, GLOVER, and WHITEAKER, JJ., agree.

HARRISON and BROWN, JJ., dissent.

WAYMOND M. BROWN, Judge, dissenting.

I respectfully disagree with the majority's conclusion that the stop had not yet been completed and that the length of the stop was reasonable. For the following reasons, I dissent.

On March 7, 2011, while driving his vehicle, appellant was pulled over by an officer of the Rogers Police Department. The officer identified himself and requested appellant's license and registration which appellant provided. A search of his driver's license revealed no warrants, but showed a prior unspecified narcotics arrest. The officer returned to the car and requested that appellant exit his vehicle, which he did. The officer asked appellant if he possessed anything illegal. Appellant answered no. The officer also asked if he could search his vehicle. Appellant stated that he did not think the officer needed to search the car. The officer's questioning continued with him asking appellant over and over, using different wording, whether he possessed anything illegal when appellant had already answered in the negative.

Officers are allowed to conduct routine checks during traffic stops. Our supreme court has stated that after these routine checks are completed, unless the officer has a reasonably articulable suspicion for believing that criminal activity is afoot, continued detention of the driver can become unreasonable.[1] Once the purpose of

---

1. *Johnson v. State,* 2012 Ark. App. 167, 5, 392 S.W.3d 897, 900 (citing Arkansas Rule of Criminal Procedure Rule 3.1)(emphasis added).

the traffic stop is completed, the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.[2] Officer Warren had completed his routine checks, with nothing occurring either in sight or action, that would give rise to a reasonable suspicion. After learning that appellant had no warrants, via the background check, the purpose of the stop was over. Any knowledge of appellant's prior narcotics arrest, which was ascertained by the background check, is irrelevant since the officer had no reasonable suspicion prior to learning of it. Officer Warren should have issued appellant a ticket and released him. At best, though I argue differently, the stop was over after appellant subsequently answered the officer's initial inquiry into appellant's prior arrests and whether appellant had any drugs. I would conclude that because Officer Warren's stop had concluded, despite his failure to return appellant's documents, he was required to have a reasonable suspicion to detain appellant. Because he lacked a reasonable suspicion to continue the stop, pursuant to Rule 3.1 of our Arkansas Rules of Criminal Procedure, I would reverse.[3]

In the absence of a reasonable, articulable suspicion of some drug-related criminal activity, once the purpose of the traffic stop is completed, the operator of the vehicle should be allowed to proceed on his way, without being subject to further delay by police for additional questioning.[4] After the officer returned to the vehicle, appellant should have been issued a ticket and released. Even if the officer was permitted to asked further questions upon his return, once appellant answered those questions, the purpose for the traffic stop had ended. Officer Warren opted instead to continue the stop, rephrasing the same question and asking it over and over despite the fact that appellant had already given his answer. Officer Warren showed no further interest in, and indeed no longer addressed, the initial purpose of the traffic stop. While the majority states that our case law suggests that a stop is not complete until the warning citation and other documents are delivered back to the driver, our case law does not suggest that an officer is allowed to withhold such documents in order to continue a stop when its purpose, for all intents and purposes, has been completed. Because the officer continued the stop when he had yet to develop a reasonable suspicion, all the while holding on to appellant's documentation, thereby preventing him from leaving, the traffic stop became a prolonged detention requiring reasonable suspicion.

Officer Warren's testimony was that he saw an empty Swisher cigar wrapper lying

2. *Yarbrough v. State*, 370 Ark. 31, 38–39, 257 S.W.3d 50, 56–57 (2007) (citing *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004) (citing *United States v. Mesa*, 62 F.3d 159 (6th Cir. 1995))).

3. Since we must address sufficiency issues first for double jeopardy purposes, I concur with the majority that the evidence before the court was sufficient to support the conviction. However, due to my belief that the purpose of the stop had been completed prior to any admissions or subsequently discovered evidence, I believe that a reasonable suspicion was required to continue the stop and that

Officer Warren lacked this. Because appellant's admission and the evidence found from a search of appellant's vehicle resulted due to the officer's improper extension of the stop, they should have been suppressed. I also concur with the majority that the stop was valid, therefore I do not address the validity of the stop.

4. *Davis v. State*, 99 Ark.App. 173, 175, 258 S.W.3d 401, 404 (2007) (citing *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004); *United States v. Wood*, 106 F.3d 942 (10th Cir.1997)).

on the vehicle's passenger side floorboard, that appellant appeared "shaken and nervous," and that his background check showed a prior drug arrest. In determining whether an officer had reasonable suspicion, courts must recognize that, "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion."[5]

Officer Warren testified that his training taught him that Swisher cigars are commonly used to make blunts for smoking marijuana, but he did not smell nor see the remains of any marijuana or blunts and did not believe appellant was under the influence of any controlled substance. Officer Warren's deduction that appellant possessed marijuana, solely because he had a Swisher wrapper, is unsupported and does not give rise to a reasonable suspicion.

As to appellant's nervous appearance, we have stated that "[m]ere nervousness, however, cannot constitute reasonable grounds for detention."[6] Initial signs of nervousness are commonplace when one is confronted by a law enforcement officer.[7] Nervousness, in addition to a Swisher cigar wrapper, is not sufficient to constitute reasonable suspicion of possession of marijuana.

Finally, Officer Warren testified that dispatch informed him of appellant's prior narcotics arrest. He was informed only of an arrest, not the specific infraction nor the narcotic involved. Officer Warren had no reasonable suspicion that appellant was in possession of any controlled substance prior to learning of appellant's prior drug arrest. Learning of appellant's prior drug arrest did not change that fact.

A cigar wrapper, nervousness, and a prior drug arrest are not enough to evoke a reasonable suspicion. Such evidence shows nothing more than a man made nervous in the presence of a police officer by his knowledge of his own prior drug arrest. There is nothing about this evidence, taken individually, collectively, or in totality, that can specifically, particularly or articulately show that appellant possessed marijuana, or any other controlled substance, on his person, or in his vehicle.

I do not include the fact that appellant possessed scales and cocaine in my analysis because my position is that the officer learned of and obtained these things after the traffic stop had ended. Only what the officer knew at the time of the detention enters the analysis of whether the officer had reasonable suspicion to conduct an investigative detention; after-acquired knowledge is irrelevant.[8] Appellant's admission to possession of K2 and the subsequent recovery of the scales and cocaine should have been suppressed.

A major crux of the majority's argument rests on the fact that the entire stop was less that 15 minutes. Rule 3.1 permits a law enforcement officer lawfully present in any place, in the performance of his duties, to stop and detain any person who he

5. *James v. State*, 2012 Ark. App. 118, at 9, 390 S.W.3d 95, 100 (citing *United States v. Cortez*, 449 U.S. 411, 419, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

6. *Enriquez v. State*, 97 Ark.App. 62, 66, 244 S.W.3d 696, 699 (2006) (citing *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004)).

7. *Laime v. State*, 347 Ark. 142, 159, 60 S.W.3d 464, 475 (2001) (citing *United States v. Beck*, 140 F.3d 1129 (8th Cir.1998)).

8. *Omar v. State*, 99 Ark.App. 436, 438, 262 S.W.3d 195, 198 (citing *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001)).

reasonably suspects is committing, has committed, or is about to commit (1) a felony or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to properly, *if such action is reasonably necessary* either to obtain or verify the identification of the person or *to determine the lawfulness of his conduct.*[9] An officer acting under this rule may require the person to remain in or near such place in the officer's presence for *a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances.*[10] At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.[11] The officer must develop reasonable suspicion to detain before the legitimate purpose of the traffic stop has ended.[12]

In *Menne v. State,* our supreme court noted that the fifteen-minute time constraint imposed by Rule 3.1 would not have begun until after the officer therein completed his routine tasks associated with the traffic stop.[13] Rule 3.1 permits an officer to detain a person for an extended period of time, beyond that necessary to complete the purpose of the initial stop, as reasonably necessary under the circumstances. The 15-minute rule, or time period which is reasonably necessary to complete the stop in the alternative, does not apply to the initial stop and is not triggered until the purpose for the initial stop is complete. After completion of the initial purpose for the stop, Rule 3.1 permits the officer to continue the stop only if he has already acquired a reasonable suspicion of criminal activity. The rule does not permit an officer to further detain a person in order to gain a reasonable suspicion.

Because it is my argument that the stop ended after appellant's background check showed no warrants, the length of the stop is irrelevant, for there was no reasonable suspicion on the officer's part that would permit him to institute a Rule 3.1 prolonged detention. Furthermore, the fact that the officer no longer directed any of his inquiries to the initial purpose of the stop shows that the initial purpose of the stop was over, and the officer, who lacked reasonable suspicion, was on a fishing expedition to find some. He withheld appellant's documentation in order to facilitate his search for the reasonable suspicion that he did not have. The same would be true even if the stop ended when appellant answered the officer's questions after exiting the car. Once the appellant answered, the officer had no further purpose associated with the initial purpose for the stop to detain him any longer.

Because the initial purpose for the stop was complete, either upon the officer's return to the vehicle post-background check or after appellant answered the officer's initial questions upon exiting the car, well before any admissions by appellant or discoveries made by the officer's search of the car, the stop was complete. Therefore, to further detain appellant required a reasonable suspicion. Officer Warren had no reasonable suspicion. Before we can determine that a valid Rule 3.1 stop occurred, or conduct any analysis of the amount of time required to complete the stop, we must first determine that reason-

**9.** *Johnson v. State,* 2012 Ark. App. 167, at 4, 392 S.W.3d 897, 900 (quoting Arkansas Rule of Criminal Procedure Rule 3.1)(emphasis added).

**10.** *Id.*

**11.** *Id.*

**12.** *Id.,* at 6, 392 S.W.3d 897 (citing *Malone v. State,* 364 Ark. 256, 217 S.W.3d 810 (2005)).

**13.** 2012 Ark. 37, at 7–8, 386 S.W.3d 451, 455.

able suspicion existed, and in this situation, it simply did not.

HARRISON, J., joins.