Cite as 2026 Ark. App. 305

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-25-724

| | | |
|---|---|---|
| JON SCHWARTZ | | Opinion Delivered May 13, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE DESHA COUNTY CIRCUIT COURT |
| V. | | [NO. 21ACR-23-157] |
| | | |
| STATE OF ARKANSAS | | HONORABLE QUINCEY ROSS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Jon Schwartz appeals a sentencing order entered by the Desha County Circuit Court convicting him of possession of more than two grams of methamphetamine with purpose to deliver and possession of drug paraphernalia and sentencing him to an aggregate term of forty-six years in the Arkansas Division of Correction and a $15,000 fine. On appeal, Schwartz argues that the circuit court erred in denying his motion to suppress evidence recovered in a search of his vehicle after he was stopped for a traffic violation. We affirm.

At the suppression hearing, McGehee police officer Tyler Perry testified that on November 5, 2023, he was working with the Tenth Judicial District Drug Task Force along with the head of the task force, Commander James Slaughter, when they stopped Schwartz for expired tags. Neither officer testified about when the traffic stop was initiated. Officer

Perry approached the driver's side of Schwartz's car. Commander Slaughter approached the passenger side of Schwartz's car and saw a pill bottle on the front passenger seat. Commander Slaughter stated that Schwartz would not answer questions about the purpose of the pill bottle or what it contained.

According to Officer Perry, Schwartz was "extremely nervous," looked at his center console when Officer Perry asked if there was anything illegal in the vehicle, and refused to open any compartments inside the vehicle to look for his license and registration. Officer Perry also said that he had dealt with Schwartz in previous incidents and thus was familiar with Schwartz's "criminal history." In light of these circumstances, Officer Perry requested assistance from a K-9 unit. Commander Slaughter testified that Schwartz was detained, and the drug dog was called due to a "totality of all the issues," which included Schwartz's nervousness, his refusal to open any compartments in the car to find his license and registration, and the unexplained pill bottle.

Officer Chris Hawkins, also with the McGehee Police Department, was dispatched to the scene with his drug dog, Hoot. There was no testimony establishing the arrival time of Officer Hawkins. Once deployed, Hoot "hit on" Schwartz's car, and the officers then searched the car. During the search, officers found a zippered bag containing methamphetamine, a methamphetamine pipe, syringes, and baggies. They also discovered a digital scale inside the center console. The officers arrested Schwartz for possession of the drugs and drug paraphernalia. Schwartz was not ticketed for his expired tags.

At the conclusion of the hearing, the circuit court orally denied Schwartz's motion to suppress. The following day, the court entered an order denying the motion to suppress and finding that the officers conducted a lawful search of Schwartz's vehicle. A jury trial was held on May 7, 2025, and Schwartz was convicted of possession of methamphetamine with purpose to deliver and possession of drug paraphernalia. This appeal followed.

Schwartz's sole point on appeal is that the circuit court erred in denying his motion to suppress. In reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review considering the totality of the circumstances, reviewing findings of facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. *Menne v. State*, 2012 Ark. 37, at 5, 386 S.W.3d 451, 454. We reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id.*, 386 S.W.3d at 454.

Arkansas Rule of Criminal Procedure 3.1 provides:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

Ark. R. Crim. P. 3.1 (2025).

A police officer may detain a traffic offender while the officer completes certain routine tasks as part of a traffic stop, such as checking on the vehicle's registration, the driver's license, and proof of insurance; determining whether there are outstanding warrants against the driver; and writing up a citation or warning. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015); *Sims v. State*, 356 Ark. 507, 514, 157 S.W.3d 530, 535 (2004). Further, police may use a drug dog during a lawful traffic stop, and if conducted during the traffic stop, it does not constitute an illegal search under the federal constitution. *See, e.g., Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *Jackson v. State*, 2013 Ark. 201, at 8, 427 S.W.3d 607, 612 (holding that it was permissible for an officer to deploy a drug dog while waiting on a criminal-information check to return); *Mickens v. State*, 2020 Ark. App. 280, at 8, 599 S.W.3d 392, 396–97 (upholding the denial of a motion to suppress when the second officer's drug dog alerted on a vehicle while the first officer was still in the process of writing a warning during the course of a lawful traffic stop).

In the cases mentioned above, the drug dog was deployed during the traffic stop. However, once the purpose of the traffic stop is completed, the officer may not further detain the vehicle or its occupants—including for a drug dog to sniff the perimeter of a vehicle—absent reasonable suspicion to justify further detention. *See Rodriguez*, 575 U.S. at 355 (holding that it was unconstitutional for police to extend an otherwise-completed traffic stop, absent reasonable suspicion, to conduct a dog sniff and remanding to determine if reasonable suspicion existed); *see also Sims*, 356 Ark. at 510, 157 S.W.3d at 532 (holding that pursuant to Arkansas Rule of Criminal Procedure 3.1, reasonable

4

suspicion was required to continue detaining the defendant after "the traffic stop was done"). Though an officer may deploy his dog while conducting the routine tasks incident to a stop during a lawful traffic stop, the officer may not extend the traffic stop to do so. *Rodriguez*, 575 U.S. at 355–56; *Dumond v. State*, 2022 Ark. App. 292, at 4, 647 S.W.3d 9, 12.

Schwartz argues on appeal that the circuit court erred in denying his motion to suppress because the officers "unconstitutionally extend[ed] the traffic stop beyond its original purpose." Relying on Rule 3.1, he argues that the officers "prolonged his traffic stop beyond the time reasonably necessary to complete the stop" and that the officers lacked reasonable suspicion to extend his detention to wait on the drug dog to arrive.

It is not clear from the record how much time elapsed between the traffic stop and the arrival of the drug dog. As set forth above, there was no testimony from any of the officers regarding the time of the initial stop or what time Officer Hawkins and Hoot arrived on the scene. However, it is unnecessary to decide whether Officer Perry and Commander Slaughter prolonged the traffic stop beyond the time reasonably necessary to complete the stop because regardless of how much time had expired, the circumstances of this case support the conclusion that soon after the traffic stop was initiated, the officers had reasonable suspicion to believe Schwartz had committed a felony.

Rule 3.1 requires the officer to possess reasonable suspicion that the person is committing, has committed, or is about to commit a felony or misdemeanor involving danger to persons or property. Ark. R. Crim. P. 3.1. The officer must develop this

5

reasonable suspicion before the legitimate purpose of the traffic stop has ended in order to extend the traffic stop. *Johnson v. State*, 2012 Ark. App. 167, at 6, 392 S.W.3d 897, 901. Whether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. *Id.*, 392 S.W.3d at 901.

The following cases offer guidance. In *Menne*, the supreme court found that the following factors combined to give the officer reasonable suspicion that the driver of the vehicle was engaged in criminal activity: (1) one month earlier, the officer had stopped the same vehicle and arrested Menne's passenger for DWI and possession of marijuana; (2) during a criminal-history check, the officer discovered that Menne had previously been arrested; (3) the officer had information from a local police department that Menne was suspected of drug dealing; (4) Menne was nervous; and (5) the time of night. 2012 Ark. 37, at 7, 386 S.W.3d at 455. In *Johnson*, we held that the combined factors of the late hour of the traffic stop, 2:20 a.m.; the driver's nervousness and failure to make eye contact; the officer's knowledge of the driver's drug history and of the passenger's drug history and recent arrest for possession of drugs; and the inconsistencies between the driver's and the passenger's explanations regarding the reason for their outing provided reasonable suspicion for continued detention of the driver. 2012 Ark. App. 167, at 7, 392 S.W.3d at 901. More recently, in *Guthary v. State*, we held that these facts provided reasonable suspicion for Guthary's continued detention: she appeared anxious and tense and lied to the officer when she said that she had not gotten gas immediately before the traffic stop

6

even though the officer had just seen Guthary's vehicle at the gas pump; Guthary's passenger refused to make eye contact with the officer; the officer discovered that Guthary was driving on a suspended license; and both Guthary and her passenger had criminal drug histories. 2025 Ark. App. 210, at 13, 711 S.W.3d 176, 183. In each of these cases, the appellate courts held that while one of these factors may not have been enough to lead to reasonable suspicion, viewing the totality of the circumstances, the circuit courts did not err in denying the motions to suppress.

Here, both Officer Perry and Commander Slaughter, who were at the scene during the initial traffic stop, testified that Schwartz was extremely nervous, refused to open any compartments inside the vehicle to look for his license and registration when Officer Perry requested them, and would not respond to the officers' questions about the purpose of the pill bottle on the passenger seat or identify its contents. Officer Perry also said that Schwartz looked at his center console when asked if there was anything illegal in the vehicle and that he was familiar with Schwartz's criminal history. One of these factors alone might not constitute reasonable grounds for detention, but Commander Slaughter said it was the totality of these factors that caused the officers to detain Schwartz in order to conduct a drug-dog sniff. We hold that under the totality of the circumstances, the facts in the case at bar give rise to the officers' reasonable suspicion that Schwartz was in the course of committing a felony drug offense sufficient to justify his continued detention. Accordingly, we affirm the circuit court's denial of Schwartz's motion to suppress.

Affirmed.

THYER and BROWN, JJ., agree.

*The Cannon Law Firm, PLC*, by: *David R. Cannon*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.