
# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-16-1110

| | |
|---|---|
| | Opinion Delivered May 31, 2017 |
| THOMAS ELLIS STUART | APPEAL FROM THE DREW |
| APPELLANT | COUNTY CIRCUIT COURT [NO. 22CR-15-145] |
| V. | |
| | HONORABLE SAM POPE, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Judge

Thomas Stuart appeals from the circuit court's order denying his motion to suppress, arguing that the police officer lacked probable cause to initiate a traffic stop. We affirm.

On 19 July 2015, Stuart was arrested and charged with driving while intoxicated (DWI), refusal to submit to chemical test, careless and prohibited driving, and carrying a firearm. In December 2015, he was found guilty of DWI and refusal to submit to chemical test by the Drew County District Court.[1] Stuart timely sought de novo review by the Drew County Circuit Court.

In May 2016, Stuart moved to suppress all evidence from what he claimed was an illegal traffic stop made "without probable cause and without reasonable suspicion." Stuart also waived his right to a trial by jury, and the court convened a bench trial on May 17. The court first addressed the motion to suppress and stated, "I read the report. It looked like

---

[1]The record does not indicate the disposition of the other two charges.

SLIP OPINION

there was probable cause. Why should we have a hearing?" Counsel responded that the court should watch the video of the traffic stop "to see if there was careless driving that he could have stopped him for. He had no probable cause." Without ruling on the motion, the court directed counsel to proceed with calling Officer James Slaughter to the stand.

Slaughter, a patrol officer with the Monticello Police Department, identified Stuart as the person he had stopped on 19 July 2015. Slaughter testified that on that date, dispatch notified officers of a report of a reckless driver in a red Ford pickup driving north on Highway 425. Slaughter, who was driving south on Highway 425, spotted a red Ford pickup, turned around, and got behind it. According to Slaughter, the truck was "weaving between the lanes, but it never crossed the lanes until we got up to 425 and 278 intersection." Slaughter said that they stopped at a red light at the intersection of Highways 425 and 278; that after the light turned green, the truck proceeded through the intersection; and that the truck momentarily crossed into the turning lane before coming back into its lane. (There was no vehicle in the turn lane at that time.) Slaughter promptly initiated a traffic stop, approached Stuart's vehicle, spoke to him, and noticed that he had blood shot, watery eyes.

At this point, defense counsel asked the court to rule on his motion to suppress and again stated that the video of the traffic stop was the best evidence. The court "overruled" the motion.

Continuing his testimony, Slaughter said that he could smell alcohol on Stuart's breath and that his speech was slightly slurred. Slaughter asked Stuart to blow into a portable

breath test (PBT) device and to perform several field-sobriety tests, the results of which indicated to Slaughter that Stuart was intoxicated.

Slaughter placed Stuart under arrest for DWI and transported him to the county detention facility. Slaughter then read to Stuart the DWI statement-of-rights form and asked Stuart if he understood it. Stuart said yes and initialed and signed the form. Slaughter next asked Stuart if he would submit to a breath test, and Stuart said that he would not. According to Slaughter, Stuart said that he refused the breath test because he did not want to lose his CDL license.

The video of the traffic stop was introduced by the defense and played for the court. On cross-examination, Slaughter agreed that he would like to see a conviction in this case; on redirect, he explained, "The way I look at it, if people get away with DWIs, they keep doing it and it's a chance they could wreck and kill somebody in the future if they're not, if it don't reflect on them now." He confirmed that he still believed Stuart was too impaired to safely operate a vehicle at the time of the stop.

Carl Smith, Stuart's brother-in-law, testified that he was with Stuart on 19 July 2015 and that he did not see Stuart consume any alcohol. Rachel Smith, Stuart's sister, likewise testified that Stuart did not consume any alcohol on July 19, but she also said that she did not see him after 3:00 or 4:00 p.m.[2] Stuart testified that he was not guilty and that if found guilty, he would lose his license and be unable to work. He claimed that on 19 July 2015, he had been awake since 5:00 a.m. and was sore from doing yard work all day. He admitted that he had two beers over the course of the day. He explained that any possible weaving

_____

[2]Stuart's traffic citation was issued at 8:30 p.m.

in his lane was caused by him reaching across to adjust a GPS unit that was attached to his windshield with suction cups. He also stated that he did not pass the field-sobriety tests because of problems with his knees and back. On cross-examination, he said that he blew into the PBT device two different times, resulting in a .08 reading the first time and .13 the second time.

Stuart was found guilty of DWI and refusal to submit to chemical test, and a sentencing order was entered in May 2016. Stuart has appealed from that order, arguing only that the circuit court erred in denying his motion to suppress.

When reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Wells v. State*, 2017 Ark. App. 174, __ S.W.3d __. We defer to the circuit court's superior position to determine the credibility of the witnesses and to resolve any conflicts in the testimony. *Id.* We will reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Johnson v. State*, 2014 Ark. App. 567, 444 S.W.3d 880.

For a police officer to make a traffic stop, the officer must have probable cause to believe that the driver of the vehicle has violated a traffic law. *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). Probable cause is defined as facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. *Id.* In assessing the existence of probable cause, our review is liberal rather than strict. *Laime v. State*, 347 Ark. 142, 60

S.W.3d 464 (2001). Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation that the officer believed to have occurred. *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). Reasonable cause for an investigative stop can be based on information supplied by another person; it need not be based on an officer's personal observation. *See Navarette v. California*, 134 S. Ct. 1683 (2014).

Stuart argues that the video of the traffic stop clearly shows that he was operating his vehicle "in a very normal fashion." He admits that he drove onto the double yellow lines dividing his lane from the turn lane, but he asserts that there was no probable cause to believe he was being inattentive or otherwise operating his vehicle in a careless manner. In support, he cites a decision from the Wyoming Supreme Court, *Dods v. State*, 240 P.3d 1208 (Wy. 2010), and implies that it held that one instance of crossing a fog line was not enough to create the articulable suspicion needed to stop a vehicle. In fact, while the court did agree that perfection was not required, it ultimately held that "a single instance of crossing the fog line can indeed be a violation of a 'single lane of travel' statute" and that "a court must examine all of the surrounding circumstances to determine whether there is justification for the stop." *Id.* at 1211–12.[3]

In response, the State notes that Stuart does not dispute that he drove outside his lane but instead argues that the violation was not enough to constitute probable cause. The State

---

[3]Stuart also contends that Officer Slaughter is biased against him, as "evidenced by his admission that he would like to see a conviction in this case." Stuart made no accusation as to Slaughter's bias below, so we will not address it on appeal. Arguments not raised at trial will not be addressed for the first time on appeal, and parties cannot change the grounds for an objection on appeal. *Hutcherson v. State*, 74 Ark. App. 72, 47 S.W.3d 267 (2001).

SLIP OPINION

argues that after seeing Stuart drive outside his lane and into the oncoming turn lane, Slaughter had probable cause to believe that Stuart had committed the offense of careless driving.

In its comments from the bench, the circuit court indicated that the police incident report provided evidence of probable cause for the stop. That report contained the following facts: (1) the police received a call about a reckless driver in a red Ford truck on Highway 425, and Slaughter located the truck and followed it; (2) Slaughter observed the truck "swerving back and forth inside its lane"; (3) Slaughter observed the truck "[drive] into the turning lane and back into its own lane." After noting this report (which was not directly received into evidence), and hearing Slaughter's testimony confirming those facts, the circuit court concluded that probable cause supported the stop and denied the motion to suppress. We find no error in the circuit court's decision.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*John F. Gibson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.