PHILLIP T. WHITEAKER, Judge
Appellant Donald Cagle entered a conditional plea of guilty to one count each of possession of methamphetamine with purpose to deliver and possession of drug paraphernalia. His conditional plea reserved his right to appeal from the circuit court's denial of his motion to suppress evidence. On appeal, Cagle contends that the initial traffic stop of his vehicle was invalid and that the subsequent search of his vehicle was unlawful. We find no error and affirm.[1]
I. Background
Cagle was pulled over for alleged traffic violations by Officer Keith Shelby of the Fort Smith Police Department. During the traffic-violation investigation, Officer Shelby conducted a canine search and found contraband in Cagle's car. Cagle was arrested on charges of possession of methamphetamine with purpose to deliver and possession of drug paraphernalia. Cagle subsequently filed a motion to suppress the evidence seized during that traffic stop. The circuit court held a hearing on Cagle's suppression motion and subsequently entered an order denying Cagle's motion to suppress. Cagle then entered a conditional plea of guilty pursuant to Arkansas Rule of Criminal Procedure 24.3(b), reserving his right to appeal the denial of his suppression motion. The circuit court sentenced him to ten years in the Arkansas *50 Department of Correction with an additional ten years' suspended imposition of sentence. Cagle filed a timely notice of appeal and now urges that the circuit court's denial of his suppression motion was erroneous.
II. Standard of Review
When reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. Bathrick v. State , 2016 Ark. App. 444, 504 S.W.3d 639. A finding is clearly erroneous when, even if there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. Prickett v. State , 2016 Ark. App. 551, 506 S.W.3d 870. We defer to the circuit court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. Pickering v. State , 2012 Ark. 280, 412 S.W.3d 143. We now turn our attention to the evidence before the court at the suppression hearing.
III. The Suppression Hearing
Cagle filed a motion to suppress, alleging that the initial traffic stop was invalid pursuant to Arkansas Rule of Criminal Procedure 3.1 and that the subsequent search of his vehicle by a canine officer followed an "unlawfully prolonged" delay. At the motion hearing, the circuit court heard evidence that Shelby effectuated a traffic stop of a Chevy Tahoe driven by Cagle. Shelby observed the Tahoe traveling northbound. Cagle initially had his turn signal on; however, when he saw Shelby and his marked patrol unit, he "acted nervous, turned his blinker off, and kept going straight." Based on this, Shelby pulled in behind the Tahoe and ran its tags.[2] Shelby discovered that there was no insurance on file for that vehicle and began to follow the Tahoe. Cagle turned into a Mini Mart parking lot without activating his turn signal one hundred feet before the turn, according to Shelby. Shelby believed that Cagle was trying to evade him, so he pulled in behind the vehicle at the gas pump and activated his blue lights.
Cagle got out of his car and appeared nervous and acted as though he did not want Shelby looking in the vehicle. Shelby asked multiple times for consent to search the vehicle, which Cagle eventually denied. Shelby then got his canine out of his car and had the dog perform a sniff of Cagle's vehicle. The dog alerted twice on the Tahoe, and Shelby's subsequent search uncovered a "rather large bag" of methamphetamine and a meth pipe. The court reviewed a video of the incident. According to the video, no more than eight minutes elapsed between Shelby's initial contact with Cagle and the discovery of the drugs.
IV. Validity of the Traffic Stop
In its order denying Cagle's motion to suppress, the circuit court found that four separate issues justified Shelby's decision to stop Cagle's vehicle: (1) Cagle's "last-second decision" to abandon his turn when he saw the officer's vehicle; (2) the lack of valid insurance on Cagle's vehicle; (3) Cagle's failure to activate his right-hand-turn signal more than one hundred feet before his turn into the gas-station *51 parking lot; and (4) the totality of the previous circumstances leading Shelby to believe that Cagle was attempting to evade or avoid him. The court found that the "possible insurance violation and the obvious turn signal violation in and of themselves individually justified the traffic stop." On appeal, Cagle challenges each of the factual underpinnings for the court's conclusion that Shelby had probable cause to stop Cagle's vehicle.
Our supreme court has settled that a police officer may stop and detain a motorist when the officer has probable cause to believe that a traffic violation has occurred. Pokatilov v. State , 2017 Ark. 264, at 9, 526 S.W.3d 849, 856 (citing Burris v. State , 330 Ark. 66, 71, 954 S.W.2d 209, 212 (1997) ). Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. Hudson v. State , 316 Ark. 360, 872 S.W.2d 68 (1994) ; Johnson v. State , 299 Ark. 223, 772 S.W.2d 322 (1989). In assessing the existence of probable cause, our review is liberal rather than strict. Brunson v. State , 327 Ark. 567, 940 S.W.2d 440 (1997). The relevant inquiry is whether the officer had probable cause to believe that the defendant was committing a traffic offense at the time of the initial stop. Pokatilov, supra . Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation that the officer believed to have occurred. Stuart v. State , 2017 Ark. App. 356, at 5, 525 S.W.3d 494, 497 (citing Travis v. State , 331 Ark. 7, 959 S.W.2d 32 (1998) ).
Although Cagle addresses each of the factors on which the circuit court relied, we address only the lack of valid insurance on Cagle's vehicle. Arkansas Code Annotated section 27-22-104(a)(1)(b) (Repl. 2014) provides that it is "unlawful for a person to operate a motor vehicle within this state unless the motor vehicle and the person's operation of the motor vehicle are each covered by ... [a]n insurance policy issued by an insurance company authorized to do business in this state." Section 27-22-104(a)(2)(A) provides, in pertinent part, that "a failure of the Vehicle Insurance Database ... to show current insurance coverage at the time of the traffic stop creates a rebuttable presumption that the motor vehicle or the person's operation of the motor vehicle is uninsured."
In Small v. State , 2018 Ark. App. 80, 543 S.W.3d 516, this court affirmed the denial of a motion to suppress when the officer initiated a traffic stop after he ran the defendant's tags and discovered that the defendant's insurance had been canceled. Citing the above statute, we expressly held that "[t]he lack of insurance information in the database was sufficient to provide Officer Hoegh with probable cause to believe that a traffic violation had occurred." Id. at 9, 543 S.W.3d at 522.
Cagle does not challenge the factual underpinning of the circuit court's finding that the Vehicle Insurance Database reflected that he had no insurance on the Tahoe he was driving. Instead, he asks this court to overrule Small , relying on the dissenting opinion's concerns with the reliability of the information in the database. As the State notes, however, Officer Shelby testified below, without objection, that he routinely runs tags for proof of insurance, and in his experience, the database is accurate more than 90 percent of the time. Although the appellate courts have the power to overrule previous decisions, we will uphold them unless great injury or injustice would result. Houghton v. State , 2015 Ark. 252, at 12, 464 S.W.3d 922, 930 (citing Bharodia v. Pledger , 340 Ark. 547, 11 S.W.3d 540 (2000) ). Cagle, as the party *52 asking us to overrule a prior decision, has the burden of showing that our refusal to overrule the prior decision would result in injustice or great injury. Id. Cagle has made no such showing here. Accordingly, we decline to overrule Small .
Further, pursuant to Small , the lack of insurance information in the database was sufficient to provide Shelby with probable cause to believe that a traffic violation had occurred. Accordingly, the circuit court's reliance on this fact to deny Cagle's motion to suppress is affirmed.
V. Validity of Vehicle Search
In his second argument on appeal, Cagle argues that, even assuming that the traffic stop was lawful-which, as addressed above, it was-the subsequent search of his vehicle was unlawful for two reasons: (1) Shelby decided to search the vehicle based solely on Cagle's invocation of his Fourth Amendment rights, and (2) Shelby had abandoned his investigation of the insurance-coverage violation-i.e., the purpose of the stop-by the time he decided to run his drug dog around Cagle's vehicle.
Cagle's first argument is not preserved for our review. At the suppression hearing, the court heard evidence that Shelby requested permission to search Cagle's Tahoe. Cagle responded that he wanted to speak to his attorney first and eventually denied consent. Cagle did briefly raise the argument that Shelby searched his vehicle because of the invocation of his constitutional right at the suppression hearing. The circuit court, however, did not make a ruling on this issue in its order denying Cagle's motion to suppress. The failure to obtain a ruling on an issue at the circuit court level, including a constitutional issue, precludes review on appeal. See Van Winkle v. State , 2016 Ark. 98, at 15, 486 S.W.3d 778, 788 ; Huddleston v. State , 347 Ark. 226, 61 S.W.3d 163 (2001).
Cagle's second argument is that the purpose of the stop-to determine whether Cagle had insurance on his vehicle-had ended by the time Shelby decided to run his drug dog around the Tahoe. As part of a valid traffic stop, a police officer may detain a traffic offender while the officer completes certain routine tasks, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning. Sims v. State , 356 Ark. 507, 514, 157 S.W.3d 530, 535 (2004). During this process, the officer may ask the motorist routine questions, such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and the officer may act on whatever information is volunteered. Id. However, after those routine checks are completed, unless the officer has a reasonably articulable suspicion for believing that criminal activity is afoot, continued detention of the driver can become unreasonable. Id.
Our supreme court has held, however, that a stop is not completed until the driver's license and any accompanying paperwork is returned. Jackson v. State , 2013 Ark. 201, at 6, 427 S.W.3d 607, 612 ; Menne v. State , 2012 Ark. 37, 386 S.W.3d 451. Cagle concedes that he had not produced his insurance paperwork by the time Shelby retrieved his dog, Ringo, from his police vehicle. He nonetheless asserts that Shelby "unreasonably prolonged" the detention in order to conduct the canine sniff. The circuit court reviewed a copy of Shelby's dashcam video, finding that less than seven minutes elapsed between the initial contact between Cagle and Shelby and the canine sniff. The circuit court noted that the first three and a half minutes of the stop were spent "engaged in conversation involving insurance coverage and other *53 matters, primarily small talk." The court further found that "[a]t the time the search began the insurance issue had not been resolved as [Cagle] can still be observed holding papers and rifling through them in a search for his proof of insurance."
Our review of the dashcam video supports the circuit court's factual findings on this point. The encounter lasted less than eight minutes, and by the time the dog sniff was conducted, Shelby still had not retrieved any insurance paperwork. Because the purpose of the stop had not concluded by the time Shelby deployed his drug dog, the circuit court did not clearly err in concluding that the detention of Cagle was not unreasonably prolonged. See Sims , supra ; see also Illinois v. Caballes , 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (holding that the use of a well-trained narcotics-detection dog-one that does not expose noncontraband items that otherwise would remain hidden from public view-during a lawful traffic stop generally does not implicate legitimate privacy interests). We therefore affirm the circuit court's denial of Cagle's motion to suppress.
Affirmed.
Virden and Klappenbach, JJ., agree.

We previously ordered rebriefing in order to address a deficiency in Cagle's addendum. Cagle v. State , 2018 Ark. App. 623, 2018 WL 6520859. That deficiency has been resolved, and the matter is now properly before us.

In his motion to suppress and at the suppression hearing, Cagle argued that Shelby had illegally accessed the Vehicle Insurance Database; however, he has abandoned this argument on appeal.