Cite as 2020 Ark. App. 145

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-19-577

|  |  |
|---|---|
| ANGELIA LAUCK | **Opinion Delivered** February 26, 2020 |
| APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CR-17-137] |
| V. | |
|  | HONORABLE GRISHAM PHILLIPS, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Angelia Lauck appeals the sentencing order entered by the Saline County Circuit Court convicting her of possession of methamphetamine and possession of drug paraphernalia. On appeal, Lauck argues that the circuit court erred in denying her motion to suppress the methamphetamine and drug paraphernalia found in her vehicle during a traffic stop. We affirm.

Lauck waived her right to a jury trial, and the circuit court held a bench trial on January 9, 2018. The parties agreed to allow the circuit court to hear the suppression motion during the bench trial.

Saline County deputy sheriff Justin Oliver testified that around 12:55 a.m. on November 1, 2016, he stopped Lauck on Interstate 30 after he witnessed her cross the center line for six seconds. Oliver said that Lauck was the only person in the vehicle. He explained to Lauck why he pulled her over, and he asked for and was provided her license, registration, and proof of insurance. Oliver testified that Lauck appeared disoriented and that "something wasn't right."

When Oliver asked Lauck about her disorientation, she told him that she was sleepy and denied having had anything to drink. Oliver gave Lauck a portable breath test, and it "showed zeroes." Oliver testified that he did not suspect Lauck had been drinking because he did not smell alcohol, but he remained concerned about her being disoriented. He conducted the horizontal gaze nystagmus (HGN) test on her, and she "did not show any clues." He asked Lauck if she had consumed narcotics or prescription medication, and she answered that she had taken the muscle relaxer Soma.

Oliver testified that although he had ruled out alcohol, his job was not done at that point because Lauck appeared to be on some type of mind-altering drug or substance that could impair her ability to drive. He explained that marijuana, Xanax, and other mind-altering substances do not demonstrate HGN clues. At this point, Oliver asked Lauck for consent to search her vehicle, and she said yes. He said that when he asked for consent to search her vehicle, he still had possession of her license, registration, and proof of insurance, and he had not written her a ticket.

Oliver testified that the search of Lauck's vehicle lasted two to three minutes because the vehicle was very clean. The only item he found was Lauck's purse in the passenger seat. In the purse, Oliver found a clear cellophane bag containing a crystal substance and a plastic tube with a crystal-powder residue in it.[1] Oliver stated that his experience led him to believe that the substance was methamphetamine.[2] He then arrested Lauck, transported her to the jail, typed his report, and placed the items he found into evidence.

---

[1] Oliver also found five and a half Xanax pills in Lauck's purse. She told Oliver that the pills belonged to her husband. She was not charged with possession of the Xanax.

[2] A forensic drug chemist from the Arkansas State Crime Laboratory testified and confirmed that the crystal substance was methamphetamine.

Oliver testified that this was not a traffic stop on which he developed probable cause to extend the stop; rather, he said this was a case in which he obtained consent to search Lauck's vehicle. He stated that only ten to twelve minutes elapsed between the time he pulled Lauck over and the time he arrested her. At another point during his testimony, however, he admitted that the evidence form for the methamphetamine reflects that it was acquired in the field at 1:30 a.m.

Lauck's counsel argued to the circuit court that the evidence discovered in the search should be suppressed and her consent held invalid. Counsel argued that Lauck was compliant; provided her license, registration, and proof of insurance; and passed the field-sobriety tests; therefore, according to Lauck's counsel, the traffic stop was over, and Oliver should have either returned Lauck's license and paperwork and sent her on her way, issued her a citation, or arrested her. Instead, he extended the traffic stop without probable cause during which time he asked Lauck for consent to search. Lauck's counsel contends that the stop began at 12:55 a.m. and that the evidence form reflects that Oliver acquired the evidence in the field at 1:30 a.m.—thirty-five minutes later—which violated Arkansas Rule of Criminal Procedure 3.1.

The State argued that Lauck's crossing the center line was a traffic violation that provided probable cause for the traffic stop. The State further argued that Oliver was still in the process of investigating the traffic stop and what he perceived as Lauck's impaired condition when he requested and was granted consent to search her vehicle. The State points out that he had not issued her a citation, returned her license or paperwork, or told her she was free to go. The State argued Lauck's consent was valid because the traffic stop was not complete.

The circuit court denied Lauck's motion to suppress. Thereafter, the court found Lauck guilty on both counts; sentenced her to two years' probation for each conviction, to run

3

concurrently; and fined her $1,000. Lauck appeals the circuit court's denial of her motion to suppress.

When reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Cagle v. State*, 2019 Ark. App. 69, at 2, 571 S.W.3d 47, 50. A finding is clearly erroneous when, even if there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*, 571 S.W.3d at 50. We defer to the circuit court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Id.* at 3, 571 S.W.3d at 50.

Rule 3.1 of the Arkansas Rules of Criminal Procedure provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of the period the person detained shall be released without further restraint or arrested and charged with an offense.

Ark. R. Crim. P. 3.1 (2019). Our supreme court has stated that a law enforcement officer, as part of a valid traffic stop, may detain a traffic offender while completing certain routine tasks, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning. *Sims v. State*, 356 Ark. 507, 514, 157 S.W.3d 530, 535 (2004). During this process, the officer may ask the motorist routine questions, such as his or her destination, the purpose of the trip, or *whether the officer may search the vehicle, and the officer may act on*

4

*whatever information is volunteered. Id.*, 157 S.W.3d at 535. However, after those routine checks are completed, unless the officer has a reasonably articulable suspicion for believing that criminal activity is afoot, continued detention of the driver can become unreasonable. *Id.*, 157 S.W.3d at 535. In *Sims*, our supreme court held that the legitimate purpose of the traffic stop ended after the officer handed back the driver's license and registration along with a warning ticket. *Id.* at 513, 157 S.W.3d at 535.

On appeal, Lauck admits that the traffic stop was proper. However, she argues that under Rule 3.1, Oliver had fifteen minutes to complete the traffic stop, and an evidence form reflects that the drugs and drug paraphernalia were acquired thirty-five minutes after the stop was initiated. In addition, she contends that the legitimate purpose of the traffic stop was complete—Oliver had asked her questions, secured her license and paperwork, and administered field-sobriety tests, which she passed. She argues that Oliver admitted he lacked probable cause to extend the original traffic stop. Therefore, when Oliver asked Lauck for consent to search her vehicle, authority to seize her had already expired, and her consent was not valid. We disagree.

In the case at bar, the legitimate purpose of the traffic stop did not end when Oliver asked Lauck for consent to search her car. Oliver had not returned Lauck's license and paperwork to her, and he had not yet issued her a warning or citation for her traffic violation. It was during this time that Oliver asked Lauck a routine question—whether he could search her vehicle—which is permitted under *Sims*. Moreover, Oliver testified that in ten to twelve minutes, he pulled Lauck over, obtained consent to search her vehicle, found the drugs and drug paraphernalia, and arrested her.[3] A twelve-minute stop is within the bounds of a reasonable amount of time to conduct a

---

[3]Lauck's argument on appeal relies heavily on an evidence form discussed by Oliver at the suppression hearing. Oliver testified that the evidence form reflects that the methamphetamine was acquired in the field at 1:30 a.m. This form is not in the addendum. And Oliver was not asked

traffic stop. Ark. R. Crim. P. 3.1. Although the circuit court did not make a specific finding as to the length of the traffic stop, we may presume the circuit court made all findings necessary to support its denial of the motion to suppress. *Coon v. State*, 76 Ark. App. 250, 254, 65 S.W.3d 889, 892 (2001).

Lauck relies on *Rodriguez v. United States*, 575 U.S. 348 (2015), for the proposition that a traffic stop may last no longer than is necessary to address the traffic violation that warranted the stop and that the seizure ends when tasks tied to the traffic infraction are, or reasonably should have been, completed. In *Rodriguez*, the officer stopped Rodriguez for veering onto the shoulder of the highway. The officer gathered Rodriguez's license, registration, and proof of insurance. *Id.* at 351. The officer also questioned Rodriguez's passenger and requested his license. *Id.* The officer wrote a warning ticket for Rodriguez, explained the warning, and then returned the documents to Rodriguez. *Id.* at 352. The officer testified that "[he] got all the reason[s] for the stop out of the way[,] . . . took care of all the business." *Id.* At this time, twenty-one to twenty-two minutes had elapsed since Rodriguez had been pulled over. *Id.* at 351–52. Thereafter, the officer requested permission to walk his dog around the vehicle, and Rodriguez said no. *Id.* at 352. The officer then instructed Rodriguez to turn off the ignition and exit the vehicle. *Id.* A second officer arrived, a drug dog was walked around the vehicle, and it alerted to the presence of drugs. *Id.* Seven or eight minutes had elapsed from the time the officer issued the written warning until the dog indicated the presence of drugs. *Id.*

---

about the discrepancy between the time stated on the evidence form and his testimony that only ten to twelve minutes elapsed between the time of the stop and the time of Lauck's arrest (which would have occurred after the drugs and drug paraphernalia had been discovered).

6

The facts of *Rodriguez* are markedly different and readily distinguishable from the facts of the present case. Unlike *Rodriguez*, Oliver had not completed the traffic stop prior to asking Lauck for consent to search her vehicle. Unlike *Rodriguez*, Lauck granted Oliver consent to search her vehicle. Unlike *Rodriguez*, only ten to twelve minutes elapsed between the time Lauck was stopped, she orally consented to a search, the drugs and drug paraphernalia were found, and she was arrested. Although the facts in *Rodriguez* and the facts in the instant case are distinguishable, the law set forth in *Rodriguez* is applicable to Lauck's case, and our holding herein is consistent with that law. Accordingly, we hold that the circuit court did not clearly err in denying Lauck's motion to suppress.

Affirmed.

GRUBER, C.J., and HARRISON, J., agree.

*John Wesley Hall* and *Sarah M. Pourhosseini*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.