Cite as 2020 Ark. App. 280

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-19-754

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 29, 2020 |
| JEREMY MICKENS | APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-18-133] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE JODI RAINES DENNIS, JUDGE |
| | | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Jeremy Mickens entered a conditional plea of guilty to one count each of simultaneous possession of drugs and firearm and possession of marijuana with the purpose to deliver following the circuit court's denial of his motion to suppress evidence. Appellant contends that the circuit erred by denying his suppression motion and by admitting hearsay testimony based on rumor into evidence at the suppression hearing. We find no error and affirm.

At approximately 8:07 p.m. on February 15, 2018, appellant was stopped by Officer Kevin Collins of the Pine Bluff Police Department due to his vehicle's license plate light being out.[1] Officer Collins asked appellant for his license, insurance, and registration.

---

[1]Officer Collins was driving an unmarked vehicle along with Officer Tomeka Oswalt.

Appellant handed Officer Collins an ID card and the vehicle registration. He declined Officer Collins's request to search the vehicle. Officer Collins subsequently went to his vehicle to check ACIC/NCIC. He also contacted Detective Aaron Robertson with Vice and Narcotics to bring his canine to the scene of the stop. Officer Collins was able to verify that appellant had a proper driver's license and that no warrants were out for appellant's arrest. He then made the decision to issue appellant a warning. As he was issuing the warning ticket, Detective Robertson arrived with Zeke. Officer Collins then made appellant turn the vehicle off and place his keys on the top of the roof. Zeke alerted on appellant's vehicle. After Zeke alerted, appellant informed the officers that there was a firearm in the vehicle. A search of the vehicle turned up a semiautomatic handgun as well as marijuana and Xanax. Appellant was arrested and charged with simultaneous possession of drugs and firearm, possession of Xanax with purpose to deliver, and possession of marijuana with purpose to deliver.

Appellant filed a motion to suppress on May 2, 2018, contending that he was illegally detained and that the search of his vehicle violated his rights. Appellant's suppression hearing took place on June 10, 2019. Officer Collins testified that he legitimately stopped appellant's vehicle due to the license plate light being out. He stated that appellant was cooperative but failed to have his driver's license or proof of insurance. He said that he asked appellant for permission to search the vehicle and appellant replied "no." He testified that he recognized appellant and that he heard rumors about appellant being involved with controlled substances. At this point, appellant objected based on hearsay, but the court

2

overruled the objection. Officer Collins stated that he ran appellant's information through ACIC/NCIC and discovered that appellant had a valid driver's license and that there were no outstanding warrants for him. He stated that as he waited for the information on appellant, he contacted Detective Robertson to bring his drug dog. He said that it took approximately ten minutes from the initiation of the stop to Detective Robertson's arrival. He testified that he was still in the process of writing the warning ticket when Detective Robertson arrived.

On cross-examination, Officer Collins testified that the license plate light was his only basis for the traffic stop. He stated that he requested the drug dog prior to receiving a response from the check he ran on appellant. He said that Detective Robertson and the dog arrived while he was writing the warning ticket. He testified that if "the drug dog would not have arrived prior to [his] issuing the warning ticket, then [he] would have proceeded to the next traffic stop." He stated that it "normally takes two minutes to get return information from ACIC/NCIC on a traffic stop." He said that he had to wait on a call back from 911 dispatch before he could return appellant's information to him or issue a citation. He stated that as soon as he was notified that the dog alerted, he removed appellant from the vehicle and the vehicle was searched. Officer Collins testified that the dog's alert was the sole basis for the search.

Detective Robertson testified that he was called to a traffic stop that involved appellant on February 15, 2018. He stated that he arrived at the scene about thirteen minutes after receiving the call. He said that his dog alerted on appellant's vehicle and that a subsequent search turned up drugs and a firearm.

3

The court took the matter under advisement and issued an order denying appellant's motion on June 12, 2019. After appellant asked for written findings of fact and conclusions, the court issued them on June 27. The court made the following pertinent findings and conclusions:

Officer Kevin Collins, Pine Bluff Police Department, initiated a traffic stop on a vehicle being driven without a properly working license plate light.

The MECA record reflects that the traffic stop was initiated at 8:07 p.m.

Once advised as to the reason for the stop, the officer asked the driver to produce his driver's license, vehicle registration, and proof of insurance.

The defendant provided registration documents, but, did not provide a driver's license or proof of insurance. The defendant did provide an I.D. card.

The officer returned to his patrol car to run a check through ACIC.

The MECA record reflects that a vice and narcotics officer arrived with the drug dog at 8:20 p.m.

No testimony was elicited that the results of the computer checks on the defendant and the vehicle were completed prior to the arrival of the drug dog.

During the open-air sniff at a high bearing, the drug dog sat at the driver's side window which indicated he detected the scent of narcotics.

A search of the vehicle resulted in the seizure of marijuana, Xanax, and a handgun.

CONC[L]USIONS

A canine sniff to the exterior of a vehicle is not a Fourth Amendment search.

Officer Collins had probable cause to believe that defendant's vehicle violated traffic laws and was justified in making the traffic stop.

Appellant entered into a conditional plea of guilty pursuant to Arkansas Rule of Criminal Procedure 24.3(b), reserving his right to appeal the court's denial of his motion to

4

suppress the evidence. As a result of the plea, he was sentenced to an aggregate term of ten years' imprisonment, and the Xanax charge was nolle-prossed. The plea, along with the sentencing order, was filed on July 9. Appellant filed a notice of appeal the same day. This appeal followed.

In reviewing a trial court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the trial court.[2] A finding is clearly erroneous when, even if there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made.[3] We defer to the trial court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony.[4]

A police officer may stop and detain a motorist when the officer has probable cause to believe that a traffic offense has occurred.[5] Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected.[6] In assessing

---

[2]*Cagle v. State*, 2019 Ark. App. 69, 571 S.W.3d 47.

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]*Id.*

the existence of probable cause, our review is liberal rather than strict.[7] The relevant inquiry is whether the officer had probable cause to believe that the defendant was committing a traffic offense at the time of the initial stop, not whether the driver was actually guilty of a traffic offense.[8]

Appellant concedes that his license plate light was out at the time his vehicle was stopped. However, he contends that Officer Collins used the traffic stop as a pretext to conduct an illegal search of his vehicle. This argument is without merit. Our supreme court has held that in cases where the stop is pretextual, it will "not allow a police officer's ulterior motives to serve as the basis for holding a traffic stop unconstitutional so long as it was a valid stop—meaning, the officer had the proper probable cause to make the traffic stop."[9] Our common-law jurisprudence does not support invalidation of a search because a valid traffic stop was made by a police officer who suspected other criminal activity.[10] Officer Collins implemented a valid traffic stop on appellant's vehicle because it was being operated while its license plate light was out, it makes no difference whether this stop was pretextual.

Appellant further argues that Officer Collins prolonged the issuing of the warning ticket so that the drug dog could arrive. Our supreme court has stated that a law enforcement officer, as part of a valid traffic stop, may detain a traffic offender while

---

[7] *Id.*

[8] *Id.*

[9] *State v. Mancia-Sandoval*, 2010 Ark. 134, at 6, 361 S.W.3d 835, 839.

[10] *State v. Harris*, 372 Ark. 492, 277 S.W.3d 568 (2008).

completing certain routine tasks, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning.[11] During this process, the officer may ask the motorist routine questions, such as his or her destination, the purpose of the trip, or whether the officer may search the vehicle, and the officer may act on whatever information is volunteered.[12] However, after those routine checks are completed, unless the officer has a reasonably articulable suspicion for believing that criminal activity is afoot, continued detention of the driver can become unreasonable.[13] In *Sims*, our supreme court held that the legitimate purpose of the traffic stop ended after the officer handed back the driver's license and registration along with a warning ticket.[14]

Here, Officer Collins testified that he was still in the process of writing appellant's warning ticket when Detective Robertson arrived with Zeke. Therefore, the legitimate purpose of the stop had not ended when Zeke alerted on appellant's vehicle. Once Zeke alerted on the vehicle, there was no additional suspicion needed for the vehicle to be searched.[15] And to the extent that appellant attempts to argue that there was no reasonable suspicion to allow the dog to sniff the exterior of the car, this argument also fails. According to our case law, if police have probable cause to detain a vehicle, no separate suspicion is

---

[11] *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Harris*, *supra*.

required to conduct a canine sniff.[16] The use of a drug dog during a traffic stop does not constitute an illegal search under the federal constitution.[17] Where there is no search within the meaning of the Fourth Amendment, no reasonable suspicion is necessary to justify having a dog smell an individual's vehicle.[18]

Accordingly, Officer Collins had probable cause to stop and detain appellant's vehicle, and we hold that any pretext on the part of Officer Collins is irrelevant and that no additional cause was needed to justify the canine sniff that took place prior to the conclusion of the legitimate purpose of the stop. We also hold that the dog's alert on appellant's vehicle provided the probable cause necessary to search appellant's vehicle. Therefore, the court did not err by denying appellant's motion to suppress.

To the extent that appellant makes an argument about Arkansas Rule of Criminal Procedure 16.2, that rule is not triggered based on the facts of this case.[19] It only comes

---

[16]*Id.*

[17]*Id.*

[18]*Id.*

[19]Arkansas Rule of Criminal Procedure 16.2 provides that a party may object to the use of any evidence on the grounds that it was illegally obtained. The rule further provides that a motion to suppress evidence should be granted if the court finds that the violation upon which it is based was substantial. Ark. R. Crim. P. 16.2(e). In determining whether a violation is substantial, the court is to consider all the circumstances, including the following:

(i) the importance of the particular interest violated;

(ii) the extent of deviation from lawful conduct;

(iii) the extent to which the violation was willful;

into play once the court finds that there has been a violation. Here, the court found no such violation so there was no reason for the court to determine whether a violation was substantial enough to justify suppression of the evidence.

Appellant argues that the circuit court abused its discretion by admitting hearsay testimony based on rumor into evidence at the suppression hearing. We agree with the State that this argument is not properly before us. Rulings on evidentiary claims are not appealable under Rule 24.3(b).[20]

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*McKissic & Associates, PLLC*, by: *Gene E. McKissic, Sr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.

---

(iv) the extent to which privacy was invaded;

(v) the extent to which exclusion will tend to prevent violations of these rules;

(vi) whether, but for the violation, such evidence would have been discovered; and

(vii) the extent to which the violation prejudiced moving party's ability to support his motion, or to defend himself in the proceedings in which such evidence is sought to be offered in evidence against him.

[20] *See Fisher v. State*, 2013 Ark. App. 301, 427 S.W.3d 743.