Cite as 2025 Ark. App. 270

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-24-429

| | |
|---|---|
| JEREL MCELROY | Opinion Delivered April 30, 2025 |
| APPELLANT | |
| | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT |
| V. | [NO. 04CR-19-2555] |
| | |
| STATE OF ARKANSAS | HONORABLE BRAD KARREN, JUDGE |
| APPELLEE | |
| | AFFIRMED |

**CASEY R. TUCKER, Judge**

The State charged Jerel McElroy with possession of a Schedule VI controlled substance (marijuana) with intent to deliver. A Benton County jury found him guilty of the lesser-included offense of possession of a Schedule VI controlled substance and recommended he be sentenced to sixty-six months in the Arkansas Division of Correction. The circuit court sentenced him accordingly. McElroy now appeals his conviction of possession of marijuana, challenging the sufficiency of the evidence and arguing that the circuit court erred when it denied his motion to suppress evidence. We affirm.

At McElroy's jury trial, the State presented two witnesses: the officer who arrested McElroy and the forensic scientist who tested the substance recovered from the car McElroy was driving at the time of his arrest. The State introduced the dash-camera video from the

stop into evidence as well. McElroy called his mother as his sole witness. The following can be gleaned from the evidence at trial.

Shortly before midnight on October 15, 2019, Officer Phillip Krug of the Gentry Police Department observed a white BMW with an expired temporary plate, so he initiated a traffic stop. McElroy was the driver of the BMW, but it was owned by his wife, Christian Swain, who was sitting in the front passenger seat. Another woman was sitting in the back seat. Officer Krug had planned to issue McElroy a warning for the expired plate; however, McElroy was unable to produce a driver's license. Upon further inquiry, Officer Krug determined neither of the two other occupants had driver's licenses, either. Officer Krug then explained to McElroy that he was required by the department's policy to issue him a citation for driving without a license. He intended to issue the citation and allow the car's occupants to call someone to come pick up the car so they did not have to have it towed. When Officer Krug leaned down to obtain the necessary information from McElroy for the citation, he detected the odor of marijuana. He then asked the occupants to exit the vehicle to allow him to conduct a probable-cause search, which is the standard practice at the Gentry Police Department. Other officers joined Officer Krug in the vehicle search.

Upon exiting the vehicle, McElroy said "here's the doobie" and handed an ashtray containing marijuana-cigarette butts—"roaches"—to Officer Krug. When the officers searched the car's trunk, they found a black bag containing over fourteen ounces of marijuana. The officers also found $3,771 in cash. Officer Krug then read the car's occupants, including McElroy, their *Miranda* rights.

McElroy told Officer Krug that the black bag was his, and he was taking the marijuana to a new dispensary in northwest Arkansas. The other two occupants of the BMW maintained that they did not own the black bag or know anything about its contents. Following Officer Krug's testimony, the State presented the forensic scientist, who confirmed that the substance in the black bag was 337 grams (approximately thirteen ounces) of marijuana.

The State rested, and McElroy moved for a directed verdict specifically as to possession of a controlled substance with intent to deliver. In the course of the argument pertaining to the motion for directed verdict, McElroy's counsel asserted, "Your Honor, my only argument is with the intent statute we have to prove that he was going to deliver it somewhere to some person." Defense counsel then argued:

> And even if [the prosecutor's] arguments all evidence points to they were going to smoke pot. They were going to use the marijuana that they had themselves for personal use. They've been smoking in the car. . . . All evidence points to they're consuming this marijuana. They're not delivering it. They didn't have baggies. They didn't have scales. They ～ there are roaches in the ashtray . . . . I think the evidence points to he was ～ there is no case for him delivering it. There's not a person they can point to. He had money because he ～ there's testimony that his wife got paid. I think that sure they possessed it. It's clear. It was in the car. They've been smoking marijuana all day. They were going to Centerton to smoke more marijuana.

The circuit court denied McElroy's motion for directed verdict. At the close of McElroy's case, he renewed his motion, and the court denied it.

The jury found McElroy guilty of the lesser-included offense of possession. Following the jury's recommendation, the circuit court sentenced him to sixty-six months in the Arkansas Division of Correction. McElroy timely appealed.

## I. Sufficiency of the Evidence

McElroy first challenges the sufficiency of the evidence supporting his conviction of possession of a controlled substance. However, he failed to preserve this issue for appellate review.

To preserve a challenge to the sufficiency of the evidence in a jury trial, the defendant must move for a directed verdict at the close of the State's case-in-chief and at the close of all of the evidence. Ark. R. Crim. P. 33.1(a); *Steen v. State*, 2020 Ark. App. 73, 595 S.W.3d 47. The defendant must be specific in his motion for directed verdict. *Id.* We strictly construe Rule 33.1. *Grube v. State*, 2010 Ark. 271, 368 S.W.3d 58. Failure to mention lesser-included offenses either by name or by elements constitutes a waiver of the challenge to the sufficiency of the evidence as to those offenses. *Brooks v. State*, 2024 Ark. App. 241, 687 S.W.3d 397; *Mainard v. State*, 102 Ark. App. 210, 283 S.W.3d 627 (2008). The reason for this rule is that when the defendant states the specific grounds for the motion and pinpoints the missing proof, the circuit court can then decide whether to grant the motion or allow the State to reopen its case and supply the missing proof. *Elkins v. State*, 374 Ark. 399, 288 S.W.3d 570 (2008). Another reason for this rule is that the appellate court cannot review an issue raised for the first time on appeal. *Id.* Failure to follow these rules constitutes a waiver of the

defendant's challenge to the sufficiency of the evidence on appeal. Ark. R. Crim. P. 31.1(c); *Steen, supra*.

Though it involved a separate count rather than a lesser-included offense, *Baxter v. State*, 324 Ark. 440, 922 S.W.2d 682 (1996), is on point with the case before us. In *Baxter*, the appellant was charged with possession with intent to deliver and criminal conspiracy to deliver a controlled substance. At the close of the State's case, he moved for a directed verdict as to possession with intent to deliver but not the conspiracy charge. Instead, appellant's counsel specifically conceded the conspiracy charge, stating, "Your Honor, they've (the State) got the conspiracy case. Let's go—let's keep this case clean and go to the jury on a conspiracy. . . ." *Id.* at 444, 922 S.W.2d at 684. Then, at the close of all of the evidence, appellant included the conspiracy charge in his motion for a directed verdict, but by then he had already waived it. Baxter was required to move for a directed verdict at both the close of the State's case and at the close of all the evidence. *Id.* Thus, Baxter was procedurally barred from challenging the sufficiency of the evidence to support his conspiracy conviction on appeal.

In the case before us, McElroy did not challenge the sufficiency of the evidence to support the lesser-included offense of possession. He argued only that the evidence did not support possession with intent to deliver. In fact, as in *Baxter*, McElroy conceded that "they possessed it. It's clear. It was in the car. They've been smoking marijuana all day. They were going to Centerton to smoke more marijuana." Not only did McElroy fail to challenge the sufficiency of the evidence to support a conviction of the lesser-included offense of

5

possession of a controlled substance, but he also specifically conceded that the evidence was sufficient. Thus, as in *Baxter*, he failed to preserve this issue for review.

## II. *Motion to Suppress*

McElroy's second point on appeal is that the circuit court erred by denying his motion to suppress. He maintains that the officers extended the traffic stop without reasonable suspicion and seized the contraband during the illegally extended portion of the stop. We disagree.

When reviewing a circuit court's denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances. *Lauck v. State*, 2020 Ark. App. 145, 596 S.W.3d 71. We review the findings of historical facts for clear error and determine whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court. *Id.* In conducting our review, we give due deference to the circuit court's superior position in determining the credibility of witnesses and resolving conflicts in testimony. *Id.* We reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Menne v. State*, 2012 Ark. 37, 386 S.W.3d 451.

Rule 3.1 of the Arkansas Rules of Criminal Procedure provides the basic rule for stopping and detaining a person:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary

either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

A law enforcement officer may detain a traffic offender while completing routine tasks, such as a computerized check of the vehicle's registration and the driver's license, writing a citation, and asking routine questions. *Lauck, supra*. "However, after those routine checks are completed, unless the officer has a reasonably articulable suspicion for believing that criminal activity is afoot, continued detention of the driver can become unreasonable." *Lauck*, 2020 Ark. App. 145, at 5, 596 S.W.3d at 74. As this court has explained, "The critical inquiry, whether there is an objectively reasonable suspicion to continue to detain a motorist, requires us to focus on what information was gleaned by the officers prior to the conclusion of the traffic stop." *Johnson v. State*, 2014 Ark. App. 567, at 6, 444 S.W.3d 880, 883. The smell of marijuana emanating from a vehicle gives rise to a reasonable suspicion, justifying detention of the occupants to determine the lawfulness of their conduct; to search the vehicle; and, depending on the circumstances, to arrest the occupants. *Id.*

In the present case, the circuit court reviewed the briefs on the motion to suppress, heard arguments, and viewed the dash-camera video before denying the motion. The legality of the initial stop was never in question. The circuit court determined that Officer Krug was in the process of issuing a citation to McElroy when he smelled marijuana. Since McElroy did not have a driver's license, Officer Krug returned to the car, leaned down, and began

7

asking him questions that were necessary to complete the citation. He asked for McElroy's address and for the make and model of the car he was driving. He then told McElroy that he smelled weed and needed the occupants to exit the vehicle so he could conduct a probable-cause search. At that point, McElroy handed Officer Krug the ashtray full of roaches, and the officers searched the rest of the car.

Having reviewed the totality of the circumstances, we hold that the circuit court's denial of the motion to suppress was supported by a preponderance of the evidence. The legitimate traffic stop had not concluded—Officer Krug was asking for the information necessary to issue the citation—when Officer Krug detected the odor of marijuana coming from the BMW. That odor gave rise to a reasonable suspicion justifying the officers' search of the car.

McElroy relies on *Rodriguez v. United States*, 575 U.S. 348 (2015), to support his argument. His reliance is misplaced. In *Rodriguez*, the Supreme Court held, in part, that a law enforcement officer may not extend an otherwise completed traffic stop, absent reasonable suspicion, to conduct a dog-sniff search. *Rodriguez* is distinguishable from the case at bar in that the officer in *Rodriguez* admittedly had completed his stop, having given the driver a warning and returned the driver's and the other occupant's documents to them before further detaining them while waiting on the arrival of another officer. The officer then led his dog around the car, and it alerted, leading to the discovery that Rodriguez was transporting methamphetamine. The discovery occurred seven to eight minutes after the officer had completed the traffic stop. *Id.* Under these facts, the Supreme Court held that

the lower court should have suppressed the evidence discovered after the traffic stop had been completed. The facts in the present case differ in that Officer Krug was still in the process of completing the citation when he detected the odor of marijuana.

McElroy's challenge to the sufficiency of the evidence is not preserved for our review, and the circuit court correctly denied his motion to suppress. Therefore, we affirm.

Affirmed.

HARRISON and BARRETT, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.